No. 26,249.

W. H. Lewis, Trustee, *Appellee,* v. Paola Telephone Exchange
et al., *Appellants.*

### SYLLABUS BY THE COURT.

1. Bonds—*Transfer—Delivery—Sufficiency of Evidence.* Findings of the trial
court that certain bonds had been transferred and delivered to the holder
in due course are held to be sufficiently supported by the evidence.

2. Tender—*Requisites—Unconditional.* Rule that a tender to be effective and
valid must be unconditional is applied to a claimed tender in the instant
case.

Appeal from Miami district court; Jabez O. Rankin, judge. Opinion filed
December 5, 1925. Affirmed.

*D. E. Palmer,* of Topeka, *Gilbert H. Frith,* of Emporia, *Chas. T. Meuser,*
of Paola, and *L. S. Harvey,* of Kansas City, for the appellants.

*B. T. Riley* and *E. J. Sheldon,* both of Paola, for the appellee.

The opinion of the court was delivered by

Johnston, C. J.: This proceeding was brought to foreclose a trust
deed given to secure the payment of $25,000 of bonds issued by
the Paola Telephone Company. It is alleged and shown that the
telephone company had been operated by Alexander Hodges, who
owned practically all of the stock of the company, and that prior to
January 1, 1917, it had bonds outstanding to the amount of $20,000
which matured during that year, and upon its application to the
public utilities commission it obtained permission to issue $25,000
of new bonds, secured by trust deed, to take up the maturing bonds
and to purchase necessary real estate, erect suitable buildings thereon
in which to transact the business of a telephone exchange, and to
make such other extensions and improvements in the plant as were
reasonably necessary. The new bonds to the amount of $25,000
were issued and the trust deed executed by the company, C. F.
Henson being named as trustee therein. On March 1, 1920, W. W.
Finney negotiated a purchase of the telephone exchange with Alex-
ander Hodges, contracting to pay $42,500 for the stock and plant,
$17,500 of which was paid in cash and Finney was to assume the
entire outstanding bonds of the company amounting to $25,000.
On the same day the parties made a supplemental agreement:

1. Bonds, 9 C. J. § 229.  2. Tender, 38 Cyc. p. 152; 26 R. C. L. 640.

"That if the trustee of the deed of trust securing the bond issue against this property shall not consent to Alex Hodges holding three thousand dollars of said bonds, then said amount of bonds shall be delivered to the purchaser of said property, W. W. Finney, and in lieu thereof Finney shall execute and deliver to said Hodges his note for three thousand dollars, payable on or before —— years from this date, with interest at six per cent per annum payable semiannually. .Dated March 1, 1920."

On July 1, 1923, there was a default in the payment of interest, and at the instance of the bondholders the foreclosure action was begun. By agreement of parties a judgment of $22,000 and interest was rendered, and that six of the bonds of $500 each, about which a dispute had arisen, should be brought into court for cancellation. Upon motion of several of the parties, Alexander Hodges and Mrs. L. C. Hodges were made parties and given the right to set forth their claims to the $3,000 in bonds, and they alleged that these bonds had been delivered to Alexander Hodges, which were thereafter for a valuable consideration and before maturity transferred and delivered to Mrs. L. C. Hodges, and that she is now the owner and holder thereof, and she asked that a judgment be rendered in her favor foreclosing the bonds. The telephone company, and Finney acting for it, admitted liability for $22,000 of the bonds, but claimed that the company was entitled to the remaining bonds to the amount of $3,000, and asked that an order be made requiring the trustee to deliver them to the company. Henson, the original trustee, had previously died and the plaintiff, Lewis, had been appointed as his successor. Alexander Hodges died during the pendency of the litigation, and his wife not only claimed ownership of the bonds, but also that she had obtained possession of the same. There was much conflicting evidence as to her ownership of the bonds, and also as to their delivery to her. Upon the evidence the court made the following findings of fact:

"1. On or about January 1, 1917, the Paola Telephone Company, after receiving authority from the public utilities commission of the state of Kansas, issued bonds in the sum of twenty-five thousand dollars ($25,000), making C. F. Henson trustee under the deed of trust for the holders of said bonds. Twenty-two thousand dollars ($22,000) of said bonds are admitted by the defendant company to have been delivered and are the property of the respective holders thereof.

"2. The only question in dispute in this action is as to the delivery and ownership of the remaining three thousand dollars ($3,000) of bonds, being bonds numbered twenty to twenty-five, inclusive, for five hundred dollars ($500) each.

Lewis v. Paola Telephone Exchange.

"3. C. F. Henson died March 21, 1922, and W. H. Lewis was thereafter appointed trustee in his place. Since the beginning of this action Alex Hodges died. Mrs. L. C. Hodges is the widow of Alex Hodges, deceased.

"4. Prior to 1920 Alex Hodges and Henry Hodges were the owners of practically all the stock of said Paola Telephone Company, and in the spring of 1920 W. W. Finney bought the entire stock of said telephone company, and became the owner and president of the same, and is still the president thereof.

"5. By the terms of the contract of purchase and sale Alex Hodges was to receive the $3,000 of bonds, which are in dispute in this case.

"6. The evidence is very indefinite as to any physical delivery of the $3,000 of bonds prior to April, 1922, but on April 4, 1922, W. H. Lewis, trustee, made actual physical delivery of the said bonds to Alex Hodges, and the bonds were placed in the safety deposit box of Mr. and Mrs. Hodges.

"7. The defendant telephone company recognized the bonds numbered twenty to twenty-five, inclusive, by paying interest coupons up to January 1, 1923, the last payment being $485 in January, 1923, and this was done after there was some controversy as to the liability of the company on the said bonds and interest coupons.

"8. Mrs. L. C. Hodges claimed these $3,000 of bonds from the time of the sale of the company, in consideration of eight years of service which she rendered for the company. The evidence does not show the actual, physical delivery of the bonds to her, but she had the bonds in her possession in the early part of 1923, and Alex Hodges recognized her ownership of these bonds in the application to open up the former judgment in this case, and by his answer filed herein, and by statements to third parties.

"9. The whole issue of bonds was due in ten years, and interest at 6 per cent was due semiannually, on January first and July first. Said bonds are payable to bearer.

"10. I find that Mrs. L. C. Hodges, the intervener, was before the commencement of this action the owner and holder in due course for value of the said bonds numbered twenty to twenty-five, inclusive, for $3,000.

"11. The defendant telephone company defaulted in the payment of the interest coupons due and payable on July 1, 1923, of the entire $25,000 of bonds, and the same became due and payable and subject to foreclosure.

"12. The defendant telephone company has not shown that it is entitled to a judgment against said W. H. Lewis, trustee."

The claim of the company and Finney is that the bonds were never delivered to Alexander Hodges. It is admitted that they were handed to him and his attorney, but it is claimed that it was done merely to force a settlement with Finney. Hodges threatened that if interest was not paid on $25,000 the whole issue would be foreclosed, and to avoid that the company paid the interest on the whole amount. It is contended that the delivery was at most a conditional one. Second, it is contended that if there was a delivery to Hodges, there was not sufficient evidence to show a delivery by

him to his wife. It is said that if the delivery had been made to an innocent third person who obtained actual possession of them, such third person would have acquired a good title thereto even though it was a conditional delivery, but it is said that the delivery was made with the understanding that they were to be turned back to the trustee, and therefore no actual delivery was made.

The supplemental stipulation between Finney and Hodges to the effect that in case the trustee did not deliver the six bonds in question Finney should deliver to Hodges his note for $3,000 was a recognition that the bonds were in the hands of the trustee, for which payment must be made. In respect to the delivery of the bonds to her, it appears that they were kept in the Hodges box, to which the trustee had a key. Mr. Hodges had other bonds besides the $3,000 which were kept in the safety deposit box in the vault of the bank operated by Mr. Henson. The key to the box was left with the trustee so that he could clip the coupons and collect them. When she was asked to turn over the bonds and take Mr. Finney's note, she declined to do so, saying it would mean another lawsuit to collect the note. The company paid the interest on the bonds up to January 1, 1923. Her husband was sick and they went to California, and at that time these bonds were delivered to her. After she returned from California the bonds owned by Mr. Hodges personally were given to her by Mr. Lewis and put in the box with the $3,000 of bonds in controversy. With reference to the consideration, she testified that she had worked for the telephone exchange for a period of eight years. She was paid in cash for the first three months, but after that no wages were ever paid to her. It is in testimony that these bonds were delivered to her in payment of her services. She had the bonds, and claimed ownership of them prior to the time that the telephone exchange was sold, and at one time had two of the bonds up at a bank as collateral before the suit was brought. It is therefore contended, and the court held, that she was a holder for value and the real owner of the bonds.

As stated, there was a conflict in the testimony as to the ownership of the bonds by Mrs. Hodges and of the delivery of the same to her. A number of circumstances were brought out in the testimony tending to show that the bonds had not been transferred, nor had they passed from the possession of the trustee, but upon the testimony in the record the ownership of the bonds by Mrs. Hodges

and the delivery of the same to her were questions of fact, and these matters of dispute have been determined by the trial court.

So far as Finney and those for whom he was acting were concerned, there was an absolute sale of the exchange for $42,500, he to assume and pay the whole issue of $25,000, and the balance of the purchase price $17,500 was paid in cash. The former owners of the exchange were to transfer the plant free from all liens, claims, demands and accounts except the $25,000 of bonds, and these Finney expressly assumed and agreed to pay with interest from the date of the transfer. No part of the bonds was excepted from the agreement, but he assumed and agreed to pay all regardless of whether they were held by Mrs. Hodges or other parties. Aside from the written promise, there was the payment of the interest on the entire issue, months after the sale and transfer of the plant, and after a controversy had arisen as to the bonds in question. The findings of the trial court that there was a delivery of the bonds to Alexander Hodges, who placed them in a safety deposit box used by Mr. and Mrs. Hodges together, that they came into the possession of Mrs. Hodges, and that her ownership of the bonds was recognized by Mr. Hodges in various ways thereafter and that she was a holder in due course, are supported by sufficient testimony, within the well settled rules of measuring evidence, which has been accepted and approved by the trial court.

So far as the consideration for the transfer of the bonds to her was concerned, she testified that she had earned them and they were transferred to her as compensation for her work for the exchange for a period of eight years during the time the plant was owned and operated by her husband. There was no conflict as to the services rendered nor as to the matter of payment for the services. She testified that while she did not have possession of the bonds when the property was sold, that she in fact owned them prior to the sale, and that before the present litigation arose she had put up two of the bonds in a bank as collateral for a loan. Under the testimony it must be held that the findings of the court, that the bonds had been duly transferred and delivered to her in due course and for a sufficient consideration, are supported by the evidence, and are conclusive on these questions upon this appeal.

There is a further contention that interest on the bonds should not have been allowed after January 2, 1924. At that time the defendant filed a motion reciting that it admitted its liability on

$22,000 of the bond issue and was ready to pay the same providing that $3,000 of the issue, being the bonds in question, was delivered to it, and upon the payment of the amount first named the bonds in controversy should be canceled. This was a conditional and invalid offer, one which meant the defeat of the intervener of any recovery and the annulment of the bonds in controversy, the payment of which the trustee had the right to enforce. The general rule is that a tender to be effectual and valid must be unconditional. (*Anderson v. Oil Co.*, 106 Kan. 483, 186 Pac. 198, and cases cited.) The trustee could not, without a breach of his trust, have accepted the offer with the attached condition. The tender as made did not warrant the elimination of accruing interest.

It is also suggested that if it be held that Mrs. Hodges may recover on the bonds, a personal judgment for the amount should be rendered against the trustee. The facts stated and the conclusion already reached as to the validity of the bonds and the right of the intervener to recover thereon, shows no breach of trust nor any ground for a recovery by the defendant against the trustee.

The judgment is affirmed.

HARVEY, J., not sitting.